833 So.2d 238 (2002)
D.W.G., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D01-701.
District Court of Appeal of Florida, Fourth District.
December 26, 2002.
*240 John R. Cook, Okeechobee, for appellant.
Crystal Y. Yates-Hammond, Fort Pierce, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We withdraw our previously issued opinion and substitute the following in its place.
The father appeals an order adjudicating his two minor sons dependent based upon the trial court's findings of sexual abuse of one child and acts of domestic violence which were harmful to both children and constituted abuse. The father claims he was denied procedural due process due to the numerous delays during the proceedings. He also alleges that the court erred in admitting unreliable child hearsay statements, that it improperly restricted crossexamination, and that its findings regarding domestic violence were insufficient to constitute abuse. Finally, he alleges that the Department of Children and Family Services ("DCF") withheld damaging information regarding its investigation, the revelation of which should have entitled him to a new trial. We conclude that the trial court did not err in any of these matters and affirm.
During the father and mother's twelve year relationship, the father verbally abused and threatened physical abuse against the mother. The mother was depressed and addicted to pain medication, resulting in several brushes with the law. When they separated, the mother obtained a domestic violence injunction against the father and retained custody of the children. After the separation, the father was accused of sexually abusing his new girlfriend's daughter, prompting DCF to interview his two sons. DCF concluded, however, that there was no present danger to the children.
The criminal charges of sexual abuse were investigated and remained pending. Over a year later the investigation was revived. During that year, the father had obtained custody of his sons from the mother by fabricating a story that he was dying of cancer. Based upon the criminal investigation against the father, the potential risk to the children, and the parents' failure to provide safe living conditions for the children, DCF filed a petition to declare the sons dependent as to both parents in 1998. The children were placed with the mother provided she remain at a *241 domestic violence shelter. The father objected based upon the mother's criminal history and addictions.
The youngest child was interviewed several times by various people, including a caseworker for the Children's Home Society and an elementary school teacher who lived at the shelter where the mother stayed and assisted in taking care of the children. Each related statements by the child revealing sexual abuse by the father. A child psychologist also interviewed the children and father. Based upon his interviews, the psychologist could not conclusively determine whether the father had in fact sexually abused the children. He did conclude that while both parents had major shortcomings, the father was better suited to care for the children if the criminal charges against him were dropped.
Shortly after the petition was filed the mother consented to the allegations contained in the dependency petition, and the court adjudicated the children dependent as to the mother. The father contested the allegations, and despite the fact that the petition was filed in 1998, the adjudicatory hearing was not conducted until January of 2001. Two judges recused themselves from these contentious proceedings, and many continuances were requested by both sides. After a full evidentiary hearing, the trial court found credible evidence existed that the father committed sexual acts only on the younger child and that these acts constituted abuse. The court further found the father committed acts of domestic violence against the mother that were harmful to both children. Based upon these findings, the court adjudicated the children dependent as to the father, which the father appeals.
The delay in setting the adjudicatory hearing underlies the father's first issue on appeal in which he claims that he was denied due process. However, the record reveals that the trial court attempted to set and expedite the dependency hearing several times, only to have either the Department or the father move for a continuance in order to adequately prepare the case. The father did not raise an objection to the delay until July of 2000. After that, he moved to recuse two judges and his counsel sought to withdraw, further delaying the final hearing until January 2001. Although section 39.408(2)(a), Florida Statutes (1997), provides that "[t]he adjudicatory hearing shall be held as soon as practicable after the petition for dependency is filed," it also allows for reasonable delay for purposes of investigation and preparation for trial. We have previously held, moreover, that a parent's acquiescence to continuances suspends the time limitations until the parent demands the court to set a trial date. See B.B. v. Dep't of Children & Family Servs., 731 So.2d 30, 36 (Fla. 4th DCA 1999). As the father acquiesced to the delays in this case, he has not shown that he was denied due process.
At the adjudicatory hearing, the father objected to the admission of the younger child's hearsay statements of sexual abuse on the ground that DCF failed to prove the reliability of the statements as required by section 90.803(23). The court held a hearing to determine whether the circumstances surrounding the statements provided "sufficient safeguards of reliability." § 90.803(23)(a)(1). It made findings, supported by specific facts, that the child's statements to the caseworker and school teacher were reliable.
In State v. Townsend, 635 So.2d 949, 954 (Fla.1994), the supreme court emphasized the trial court's responsibility in ensuring that child hearsay statements satisfy a strict standard of reliability before admitting them as substantive evidence. The trial court must make findings *242 that satisfy two criteria: "(1) the source of the information through which the statements was reported must indicate trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." Id. at 954. These findings must be specific to the case. Id. Mere recitation of the statutory requirements is insufficient, and without such findings, this court cannot determine whether the trial court abused its discretion in finding the statements reliable. See Hopkins v. State, 632 So.2d 1372, 1377 (Fla.1994).
The trial court complied with these directives. Its findings detailed specific facts to support both Townsend criteria. The father's main complaints on appeal, neither of which was raised at trial, are (1) that the child was interviewed numerous times by the caseworker, which could have affected the child's ability to actually recall what occurred, and (2) that at the hearing, the child had no recollection of speaking to the school teacher. Not only were these arguments not preserved for appeal, but they are without merit. As to the taint of multiple interviews, this issue was raised and considered during the hearing on the admissibility of the hearsay statements. Although the father argues that the trial court did not consider the child psychologist's testimony with respect to the reliability of the statements, the father failed to present this evidence during the hearing to determine reliability. As to the father's reliance on the child's inability to recall his conversation with the caretaker, this is irrelevant to determining reliability. Hearsay statements do not need to be consistent with a child's testimony at trial in order to be admissible. See Dep't of Health & Rehabilitative Servs. v. M.B., 701 So.2d 1155, 1160 (Fla.1997). We conclude that the trial court did not abuse its discretion in admitting the child hearsay statements.
Other evidentiary rulings challenged by the father include the court's restriction of his cross-examination of several DCF witnesses. A trial court is afforded broad discretion in limiting crossexamination. See Slocum v. State, 757 So.2d 1246, 1250-51 (Fla. 4th DCA 2000). Moreover, cross-examination is limited to the subject matter addressed during direct examination and the witnesses' credibility. See generally Jenkins v. Wessel, 780 So.2d 1006, 1008 (Fla. 4th DCA 2001). The court did not abuse its discretion in limiting cross-examination of the witnesses in this case, because the questions asked were either hearsay, irrelevant, or beyond the scope of direct examination. Moreover, the information was obtained later through other witnesses or through the father calling those witnesses in his case-in-chief.
The father also challenges the trial court's finding that the father engaged in acts of domestic violence which harmed the children. He contends that the evidence did not demonstrate that the children were aware of the violence occurring. See D.H. v. Dep't of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000). He apparently believes that the children must actually see violence to satisfy this criteria. We disagree. Children may be affected by domestic violence and may be aware of the violence, even if they do not see it occur with their own eyes. There was ample evidence in this case that the children were in the house when the father was abusing the mother. The mother testified that she heard the children crying when the father took her in the bathroom to abuse her. There also was evidence that the older son walked into the bathroom when the father was sexually abusing the mother. Moreover, the mother fled the home on more than one occasion with *243 the children due to the domestic violence incidents. This evidence supports a finding that the incidents of domestic violence constituted abuse sufficient to support an adjudication of dependency.
Finally, in his motion for rehearing, the father specifically sought to obtain a new trial based upon newly discovered evidence, consisting of a report of the Inspector General that criticized DCF's handling of this case. The trial court denied the motion on the merits. His counsel's subsequent filing of a motion for rehearing after the order of disposition, asserting the same newly discovered evidence issue, also was denied.[1] We conclude that the trial court did not abuse its discretion in denying these motions. While the reports were critical of DCF's handling of this family, most of the criticisms revolved around administrative decisions, such as documenting interviews, leaving the children with the mother, and insufficient investigations. It does not refute the evidence offered at trial supporting the adjudication of dependency as to the father.
For these reasons, we affirm the order of adjudication of dependency.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] There is no written ruling on the order denying the second motion. Orally, the court denied it as untimely. Although denial for untimeliness was improper, see A.G. v. Dep't of Children & Family Servs., 731 So.2d 1260, 1261-62 (Fla.1999), the court had denied the father's earlier motion, on the merits, raising the same issue.