982 So.2d 1217 (2008)
Stephen LUKACS, Jr., Appellant,
v.
Dianna LUTON, Appellee.
No. 1D07-1312.
District Court of Appeal of Florida, First District.
May 27, 2008.
Christopher T. Wilson of the Law Office of Gary Baker, P.A., Callahan, for Appellant.
No appearance for Appellee.
THOMAS, J.
Appellant seeks review of a final judgment of injunction for protection against repeat violence. This case presents an issue of first impression: whether section 784.046(1)(b), Florida Statutes (2006), authorizes an injunction for repeat violence where the petitioner is a victim of stalking, which by statutory definition must include repeated acts of following or harassment. Here, Appellant stalked Appellee, the victim, by following her and then harassing her at work.
We hold that section 784.046(1)(b), Florida Statutes, authorizes an injunction for protection against repeat violence where a person commits stalking against the petitioner. We base our holding on the statutory definitions of repeat violence and stalking, and on the canons of statutory construction. If we were to hold that section 784.046(1)(b) requires two incidents of stalking, a person would be allowed to follow or harass a victim at least four times before a court could issue a protective injunction. In our view, such an interpretation is contrary to legislative intent and leads to an absurd result. We thus affirm the trial court's final judgment and certify conflict with the Fifth District.

Facts and Procedural History
Appellee filed a petition for injunction for protection against repeat violence, alleging that Appellant, who was unknown to her, approached her at work and threatened *1218 her. Based on Appellee's petition, the trial court granted a temporary injunction for protection against repeat violence.
Appellant moved to dismiss the petition, denying that the alleged acts occurred and arguing that Appellee failed to allege that Appellant committed two acts of violence or stalking in her petition, as required by statute. The trial court denied Appellant's motion, reasoning that the petition alleged two separate incidents based on Appellant's first following Appellee and then his harassment of Appellee at her workplace the next day.
At a later hearing on the petition, Appellee testified that she was working as a waitress when Appellant, whom she did not know, approached her and said she needed to talk to him. She testified that Appellant said there was a "mystery" behind her, and he wanted to know why she was working at the restaurant. Although he told her he would not harm her if she did not talk to him, Appellant told her he knew where she lived and that he might rape her. Appellee further testified that Appellant knew her exact street address, the precise three roads she had driven the previous night on her way home, and what she was wearing the night before while in her home. When the court asked Appellant about these encounters, he testified that it could have been a coincidence, or "maybe there was some non-coincidence behind it, maybe some ... divine thing behind it. A divine sparkle." The trial court then found sufficient cause to enter an injunction for protection against repeat violence, and prohibited Appellant from having any contact with Appellee.
Appellant moved for rehearing, citing Dudley v. Smith, 786 So.2d 630 (Fla. 5th DCA 2001), and noting that "one court has concluded that at least four acts of harassment are required to support an injunction against repeat violence based on stalking." Therefore, Appellant argued, the evidence here was insufficient to support the injunction. The trial court denied Appellant's motion.

Analysis and Standard of Review
To properly resolve this case, we must interpret the statutory definitions of violence, repeat violence, and stalking. We first recognize that our standard of review in construing the relevant statutes is de novo. Polite v. State, 973 So.2d 1107, 1111 (Fla.2007). Unlike the statute at issue in Polite, the rule of lenity does not apply to our analysis because we are not reviewing a criminal statute. See § 775.021(1), Fla. Stat. (2006). Accordingly, we do not interpret the statute in the light most favorable to Appellant; rather, we must determine whether the relevant language is susceptible to competing meanings, and if so, we must apply the relevant and compelling rules of statutory construction.

A. Statutory Definition of Repeat Violence and Stalking
Section 784.046(2), Florida Statutes (2006), creates a cause of action for protection against repeat violence, dating violence, and sexual violence, and provides an injunctive remedy to protect victims from the dangers associated with repeated acts of violence or stalking.
Section 784.046(1), Florida Statutes (1994), defined violence and repeat violence as follows:
(a) "Violence" means any assault, battery, or sexual battery by a person against any other person.
(b) "Repeat violence" means two incidents of violence committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner....
*1219 In 1995, the Legislature inserted the words "or stalking" into both of these definitions. Ch. 95-195, § 13, Laws of Fla. Repeat violence is now defined as follows:
(b) "Repeat violence" means two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner....
§ 784.046(1)(b), Fla. Stat. (2006) (emphasis added).
As defined in section 784.048, Florida Statutes (2006), stalking requires the State to prove that a person committed repeated acts of following or harassment. Subsection (1) defines "harass" as "to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. (2006). "Course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." § 784.048(1)(b), Fla. Stat. (2006) (emphasis added). Subsection (2) then provides that any person who "willfully, maliciously, and repeatedly follows [or] harasses ... another person commits the offense of stalking...." § 784.048(2), Fla. Stat. (2006).
Thus, by its statutory definition, stalking requires proof of repeated acts. Because of this requirement, the Second District has recognized that double jeopardy principles preclude a criminal conviction for multiple counts of stalking, even during a lengthy time period. See Eichelberger v. State, 949 So.2d 358 (Fla. 2d DCA 2007); Marinelli v. State, 706 So.2d 1374 (Fla. 2d DCA 1998). We believe the Second District's analysis is relevant in our interpretation of the repeat violence injunction statute, which we discuss in more detail below.
Appellant argues that the injunction statute requires at least two acts of stalking. If the phrase "two incidents of violence or stalking" in section 784.046(1)(b), Florida Statutes, is read to mean "two incidents of stalking," Appellant would be correct; however, we do not think the statute can be reasonably read in this manner.
Before addressing the relevant canons of statutory construction, we first note that in the operative phrase of section 784.046(1)(b), the adjective "two" is placed immediately before the noun phrase "incidents of violence," and not before the word "stalking." If the legislature intended to require "two incidents of stalking," it could have easily said so by simply writing the definition of repeat violence to read, "`Repeat violence' means two incidents of violence, or two acts of stalking...."
More significantly, in order to agree with Appellant's position, we must assume the legislature meant that a person would be allowed to stalk a victim twice before an injunction for repeat violence could be issued. As noted above, however, such a reading is contrary to the decisions which recognize that a person can only commit one act of stalking through repeated acts. See Eichelberger, 949 So.2d at 360-361; Marinelli, 706 So.2d at 1375. Under Appellant's proposed definition of stalking, it is practically impossible for a court reviewing a request for a protective injunction to find that a person stalked a victim twice. Thus, were we to interpret the phrase "two incidents of violence or stalking" as requiring that two incidents of stalking occurred, this would result in the essential elimination of this cause of action for a protective injunction.
We think the more sound reading of the statute leads to the conclusion that the legislature added the phrase "or stalking" to ensure that victims who had already *1220 suffered repeated acts of following or harassment could obtain protective injunctions under section 784.046, Florida Statutes (2006).

B. Interpreting Legislative Intent and Avoiding an Absurd Result
Despite our view to the contrary, because the statutory text could be plausibly read to require two incidents of stalking, the statute could be considered ambiguous; therefore, we must apply the relevant rules of statutory construction to determine legislative intent. See Maddox v. State, 923 So.2d 442, 445-446 (Fla.2006). In Maddox, the Florida Supreme Court reversed this court's decision interpreting a statute as unambiguous, noting that in order to ensure that legislative intent prevails, a statute must be read as a whole and related statutes must be considered together. Id. This is true even where the "evident intent is different from the literal import of the terms employed to express it...." Id. (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992)). The court rejected literal statutory interpretations that produce absurd results. We think this principle applies here.
To adopt the view of Appellant would lead to the absurd result of requiring stalking victims to show that they twice suffered from repeated harassment or following before obtaining a protective injunction. Were we to adopt such an interpretation, Appellant could have threatened or followed Appellee four times before the circuit court could issue a protective injunction. In addition, such a result is contrary to clearly established public policy, enacted three years before the legislature added the phrase "or stalking" to the repeat violence statute.
In 1992, the legislature enacted a landmark law designed to protect stalking victims, which included the following clauses:
WHEREAS, the legislature has been informed through the media, and by complaints from victims, their families, and friends about prolonged suffering from conduct commonly described as stalking, which consists of a knowing and willful course of conduct by any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily harm, and
WHEREAS, the traditional protections currently available under criminal statutes are not always applicable to stalking, and
WHEREAS, the Legislature desires to provide protections to victims, their families, and friends from the needless torment caused by stalking,
NOW, THEREFORE, ....
Ch. 92-208, Laws of Florida (emphasis added).
We find further support for our view in Matrix Employee Leasing v. Hernandez, 975 So.2d 1217, 1219 (Fla. 1st DCA 2008), where this court recognized that "[t]o properly determine the scope of a statutory term, it is necessary to consider the act as a whole, the evil to be corrected, the language of the act, including its title, the history of the enactment, and the state of the law already in existence on the subject." Id. (citation omitted).
In examining the factors listed in Matrix, we note that the amendment adding "or stalking" to the repeat violence definition was contained in an "act relating to domestic violence." Ch. 95-195, § 13, Laws of Fla. We think it is entirely consistent with our interpretation that an act intended to reduce domestic violence would not require that a stalking victim, who could also be a victim of domestic *1221 violence, must prove that multiple stalkings occurred before a court could issue a protective injunction. In light of the stalking definition in effect when the amendment was adopted, we find that our interpretation of the phrase "or stalking" is the better reading of the 1995 legislation.
We acknowledge that a legislative staff analysis expressed the view that the phrase "or stalking" would allow an injunction for repeat violence to be issued based on "two incidents of stalking within six months of each other." Fla. S. Comm. on Crim. Just., CS for SB 2216 (1995) Staff Analysis (Apr. 26, 1995). We recognize that legislative staff analyses are "one touchstone of the collective legislative will," White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998) (quoting Sun Bank/South Florida, N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994)), but we do not find the analysis here sufficiently compelling. To rely on this staff analysis would elevate that document over well-established public policy enacted by the legislature three years earlier.

Conclusion
Thus, based on the 1995 amendment to section 784.046, Florida Statutes, we affirm the trial court's ruling issuing the injunction for protection against repeat violence. Although the trial court did not base its ruling on the above analysis, we may affirm a trial court's ruling if it is correct for any reason. Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record."). Because the facts established below show that Appellant committed an act of stalking, and the trial court found Appellant committed such an act, we may affirm. See Robertson v. State, 829 So.2d 901, 906-907 (Fla.2002).
We certify conflict with Dudley v. Smith, 786 So.2d 630 (Fla. 5th DCA 2001), which directly holds that a petitioner must show that they have experienced two acts of stalking in order to obtain an injunction for protection against repeat violence.
AFFIRMED; CONFLICT CERTIFIED.
BENTON, J., concurs; DAVIS, J., dissents with written opinion.
DAVIS, J., dissenting.
Because I conclude that the issuance of an injunction for protection against repeat violence requires more than one incident of stalking, I respectfully dissent.
It is important to note that the definition of "violence" includes stalking. See § 784.046(1)(a), Fla. Stat. (2006). It is also important to note that the Legislature did not create a cause of action for an injunction for protection against violence. Rather, it created a cause of action for an injunction for protection against repeat violence. See § 784.046(2), Fla. Stat. (2006). "Repeat violence" is defined as "two incidents of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member." See § 784.046(1)(b), Fla. Stat. (2006) (emphasis added). Had the Legislature defined "repeat violence" as "two incidents of violence committed by the respondent, one of which much have been within 6 months of the filing of the petition, or one incident of stalking, which must have been within 6 months of the filing of the petition," I could have agreed with the majority's interpretation of the statute. However, by inserting "or stalking" where it did, after the phrase "two incidents of violence" but before the phrases "one of which" and "which are," the Legislature obviously intended that two *1222 incidents of stalking are necessary for the issuance of a repeat violence injunction.
The legislative staff analysis is an indication of the Legislature's intent in this case. See Fla. S. Comm.Crim. Just., CS for SB 2216 (1995) (April 26, 1995) "Stalking would also be added to the definition of `violence' and `repeat violence' i[n] s. 784.046, F.S. (Supp.1994), such that a repeat violence injunction could be issued for two incidents of stalking within six months of each other." (Emphasis added). Although the majority attempts to lessen the significance of the legislative history in this case, "[legislative] history is an `invaluable tool' in construing the provisions of a statute." See Massey v. David, 979 So.2d 931, 942 (Fla.2008) (quoting Ivey v. Chicago Ins. Co., 410 So.2d 494, 497 (Fla. 1982)).
Furthermore, Family Law Form 12.980(f), entitled "Petition for Injunction for Protection Against Repeat Violence," which is the form approved by the supreme court and which was the form used by Appellee in this case, requires a petitioner to explain the incidents giving rise to the petition and sets forth in part:
Respondent has directed at least two incidents of "violence," meaning assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnaping, or false imprisonment, or any criminal offense resulting in physical injury or death against Petitioner or a member of Petitioner's immediate family. One of these two incidents of "violence" has occurred within 6 months of the date of filing of this petition. The most recent incident ... is described below.
(Emphasis added). Nothing in this form provides any indication that a repeat violence injunction may be issued based on one incident of stalking. On the contrary, two incidents must be alleged and established.
In addition, although the majority relies upon the Second District's decisions in Eichelberger v. State, 949 So.2d 358 (Fla. 2d DCA 2007), and Marinelli v. State, 706 So.2d 1374 (Fla. 2d DCA 1998), both of which addressed the prohibition against double jeopardy, the Second District has interpreted "repeat violence" in the context of injunctions to require either two incidents of stalking or violence. See Smith v. Melcher, 975 So.2d 500, 502 (Fla. 2d DCA 2007) (reversing the repeat violence injunction because although one incident of stalking occurred, the second alleged incident of violence was not supported by competent, substantial evidence); Slack v. King, 959 So.2d 425, 425 (Fla. 2d DCA 2007) ("Repeat violence is defined as two incidents of stalking or violence."); Poindexter v. Springer, 898 So.2d 204, 206 (Fla. 2d DCA 2005) ("[The appellee] did not allege an incident of violence against her; thus, for the injunction to have been valid, [the appellant] must have committed at least two acts of stalking against her."); Russell ex rel. Russell v. Hogan ex rel. Hogan, 738 So.2d 1003, 1003 (Fla. 2d DCA 1999) ("Repeat violence is defined as two incidents of stalking or violence...."); see also Werner v. Scharlop, 867 So.2d 1172, 1173 (Fla. 4th DCA 2004) (finding that the evidence supported the trial court's determination that the appellant's actions caused the appellee substantial emotional distress, "which is all that is required when the injunction is predicated upon repeated acts of stalking"); Dudley v. Smith, 786 So.2d 630, 631 (Fla. 5th DCA 2001) (holding that repeat violence requires "two incidents of `violence or stalking'").
Accordingly, I would reverse the injunction.